DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Larae N. Keaton, appeals from the decision of the Summit County Court of Common Pleas, which sentenced her to the maximum sentence for the crime of aggravated vehicular homicide. We affirm.
 {¶ 2} On September 11, 2002, Ms. Keaton was indicted on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2); one count of failing to stop after accident/hit skip, in violation of R.C.4549.02; one count of no operator's license, in violation of R.C.4507.02(A); one count of failure to stop at a stop sign, in violation of R.C. 4511.12; and one count of reckless operation, in violation of R.C.4511.20. Ms. Keaton pled not guilty to the charges.
 {¶ 3} On October 7, 2002, Ms. Keaton retracted her plea of not guilty and entered into a plea agreement with the State, thereby pleading guilty to one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2) and one count of failing to stop after accident/hit skip, in violation of R.C. 4549.02. The other charges were subsequently dismissed according to the plea agreement.
 {¶ 4} Ms. Keaton admitted to driving a vehicle that struck and subsequently killed Mr. Kimevski on or about August 20, 2002. At the time, Ms. Keaton was driving a car that she rented from a cousin who was also a passenger in the vehicle; the car was reported stolen the next day. Ms. Keaton was operating said vehicle without a driver's license or insurance. Ms. Keaton stated that, at the time of the accident, she was being chased by another vehicle. After turning into a residential neighborhood at a high speed, Ms. Keaton hit the victim who was crossing the street in front his house. The victim's wife saw the accident. Ms. Keaton maintains that she did not see the victim nor did she hear any warning from her passengers to slow down because there was a man in the street.
 {¶ 5} Two of the passengers gave statements to police that they warned Ms. Keaton to slow down because there was a man in the street, and that Ms. Keaton instead accelerated the vehicle. After the vehicle hit Mr. Kimevski, Ms. Keaton continued driving for a few blocks, abandoned the vehicle, and then ran to her house. A few days later, Ms. Keaton turned herself in to the Akron City Police Department. The other passengers also turned themselves in that day.
 {¶ 6} At sentencing, the trial court stated that Ms. Keaton's crime was "one of the worst crimes that [she] had ever seen." The trial court sentenced Ms. Keaton to the maximum penalty for the crime of aggravated vehicular homicide, five years in prison. Ms. Keaton was also sentenced to one year of imprisonment to be served concurrently for the hit skip. Ms. Keaton's driving privileges were suspended for three years, and she was ordered to pay all prosecution costs. This appeal followed.
 {¶ 7} Ms. Keaton asserts two assignments of error. They will be stated and discussed separately.
 First Assignment of Error
"The Trial Court Erred In Sentencing Defendant To A Term Of Imprisonment That Was More Than The Minimum Sentence For Punishment Of The Crime Of Aggravated Vehicular Homicide, O.R.C. § 2903.06(A)(2), As It Was Not Supported By The Record And Was Contrary To Law."
 {¶ 8} In her first assignment of error, Ms. Keaton argues that the trial court erred in imposing greater than the minimum sentence for the charge of aggravated vehicular homicide. We disagree.
 {¶ 9} Pursuant to R.C. 2953.08(G)(2), when an appellate court reviews a trial court sentence, the appellate court may modify the sentence or remand for resentencing if the appellate court finds that the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 10} R.C. 2929.14(B) governs the imposition of minimum standards:
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
"* * *
"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 11} The Ohio Supreme Court requires the record of the sentencing to show that at least one of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.State v. Edmonson (1999), 86 Ohio St.3d 324, 326. However, the trial court is not required to give its reasons for its findings. Id. This Court has concluded "that Edmonson requires a trial court to use some language that is close, if not identical, to the statutory criteria when articulating its findings." State v. Riggs, (Oct. 11, 2000), 9th Dist. No. 19846. This Court also requires that the appellate court review both the transcript of the sentencing hearing and the journal entry. Id. In the transcript of the sentencing hearing, the trial court stated,
"the Court declines to give you [Ms. Keaton] the minimum sentence. I believe to give you a minimum sentence would demean the seriousness of Mr. Kimevski's life."
 {¶ 12} The journal entry states that,
"The Court further finds the following * * *:
"(1) anything less [than the sentence imposed] would demean the seriousness of the offense;
"(2) not to sentence the Defendant to a period of incarceration would not protect society from future crimes by the Defendant[.]"
 {¶ 13} In the transcript of the sentencing hearing and the journal entry, the trial court used language that is almost identical to the language used in the statute. Upon review of the record, we find that the record supports the trial court findings. The trial court did not commit an error when it sentenced Ms. Keaton to a greater period of incarceration than the statutory minimum because the requirements of R.C. 2929.14(B) were satisfied. Ms. Keaton's first assignment of error is overruled.
 Second Assignment of Error
"The Trial Court Erred In Sentencing Defendant, Who Had Never Been Previously Imprisoned, To The Maximum Sentence Of Five (5) Years Imprisonment For Punishment Of The Crime Of Aggravated Vehicular Homicide, O.R.C. § 2903.06(A)(2), As It Was Not Supported By The Record And Was Contrary To Law."
 {¶ 14} In her second assignment of error, Ms. Keaton asserts that the five-year maximum sentence imposed on her was not supported by the record and was contrary to law because she had never been previously imprisoned. We disagree.
 {¶ 15} The imposition of maximum sentences is governed by R.C.2929.14(C) and R.C. 2929.19(B). R.C. 2929.14(C) permits a trial court to impose a maximum prison term on a defendant who has met one of four criteria: 1) the defendant committed the worst form of the offense; 2) the defendant poses the greatest likelihood of committing future crimes; 3) the defendant is a major drug offender of the type set forth in R.C.2929.14(D)(3); or 4) the defendant is a repeat violent offender of the type set forth in R.C. 2929.14(D)(2). Additionally, R.C. 2929.19(B)(2)(d) mandates that if the trial court imposes a maximum prison term allowed for an offense under R.C. 2929.14(A), the court must give its reasons for that decision.
 {¶ 16} The Ohio Supreme Court held that in order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying at least one of the four criteria set forth in R.C. 2929.14(C).Edmonson, 86 Ohio St.3d at 329. In the present case, the trial judge stated in the transcript of the sentencing hearing that,
"Because you [Ms. Keaton] chose to speed up [after being warned of the victim in the street], because you voluntarily got behind the wheel of that car, because you ran over that man, you saw him go into the air by your own statements in front of your windshield, and you chose to speed off and leave this man dying in the street. To me, to this Court, that is one of the worst crimes that I have ever seen, and anyone has ever seen. I've been on this bench almost ten years and I can say this is one of the most callous, cold, calculated acts of homicide."
 {¶ 17} When addressing recidivism, the trial judge stated in the transcript of the sentencing hearing that, "In my opinion you are likely to re-offend. You're likely to re-offend because of the coldness of this offense, itself." The journal entry states that, "pursuant to R.C.2929.14(C), the Court rendered the maximum sentence of five (5) years on the Aggravated Vehicular Homicide charge because the offender committed the worst form of the offense." The journal entry then lists multiple reasons the trial court considered this count of aggravated vehicular homicide to be the worst. They include:
1) Defendant was speeding through a residential neighborhood when she ran a stop sign and struck the victim who was crossing the street in front of his home.
2) The high speed at the time of impact caused the victim's body to go airborne causing him to suffer massive head trauma including a skull fracture and a nearly severed spine.
3) Prior to the accident, two passengers in Defendant's car told her to stop or slow down because there was a man in the street. Defendant did not slow down, and in fact accelerated according to witnesses.
4) Defendant fled the scene after striking the victim. Defendant never returned to the scene to check on the victim who was left lying on the ground.
5) Defendant was driving a stolen vehicle. (It was reported stolen the day after the accident.)
6) Defendant had no driver's license and no insurance at the time of the accident.
7) The victim's wife witnessed the tragedy in front of her home, as well as the devastating psychological impact the victim's death had on his family; including children and grandchildren as stated during the sentencing hearing.
8) During sentencing, Defendant was remorseful and crying, but when questioned as to why she did not stay after the accident, Defendant immediately ceased crying and became defensive. Despite the warnings of two passengers, Defendant continued to maintain that she did not see the victim.
9) The Court further incorporates by reference any additional reasons stated during the sentencing hearing regarding its reasons for the maximum sentence.
 {¶ 18} The trial court sufficiently stated and gave its reasons for considering the aggravated vehicular homicide charge to be one of the worst forms of the offense pursuant to R.C. 2929.14(C), and the trial court gave its reasons for the imposition of the maximum sentence in the transcript of the sentencing hearing and the journal entry. Therefore, the trial court did not commit an error by sentencing Ms. Keaton to the maximum sentence for the crime of aggravated vehicular homicide. Ms. Keaton's second assignment of error is overruled.
 {¶ 19} Because there is no clear and convincing evidence that the trial court acted contrary to law or the record, Ms. Keaton's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
BAIRD, P.J.
WHITMORE, J. CONCUR